## CAMPBELL *v.* JOHNSTON and others.

A testator devised real estate which was subject to mortgages, to his executors, in trust to sell the same and divide the proceeds among his children. He also made the executors their guardians. The property produced an income exceeding the interest of the mortgages, but the interest was not paid, the mortgages were foreclosed, and one of the executors became the purchaser at the sale.

*Held,* that the executor had a duty to perform in respect of the property, which was inconsistent with his becoming such purchaser; and the sale was set aside.

The executors had no estate in the land, but a mere power in trust. Nevertheless they were held accountable to the heirs for the rents received by them under the impression that they were entitled to collect such rents as executors.

They were also required to account for the ten per cent. paid down, on two public sales made by them, which the purchasers failed to complete.

All the devisees are necessary parties to a suit against the executors respecting such real estate.

Sept. 18; Oct. 9, 1843.

Thomas Campbell, the father of the complainant, died in 1838, leaving a will in which he appointed Oliver Johnston and George Cummings, the defendants, guardians of his children, and executors of his estate, real and personal, which, in the terms of the will, he devised to them in trust, to be sold for the benefit of his heirs. Part of the estate of which he died seised, was a house in Ludlow-street, then subject to three mortgages held by the New-York Contributionship Insurance Company. The executors took possession of the house after Campbell's

death, let it, and received the rents, which exceeded the interest on the mortgages.

Afterwards, the house and lot were put up at auction by the executors, and sold on two several occasions. On each sale ten per cent. of the purchase money was paid, which was forfeited on both occasions, the purchasers having neglected to take the property and complete the respective purchases.

The interest on the mortgages was not paid ; and in this state of the affairs, the Insurance Company foreclosed the mortgages in this court. At the sale, the property was purchased by Johnston on his own account. The master, after discharging the mortgages and costs, paid a considerable surplus into court. To this surplus Johnston then made claim, under a mortgage which he held on the property, dated January, 1828, but upon which no interest appeared to have been paid. He, however, obtained the money on the reference as to the surplus.

This suit was brought by one of the daughters of the testator, to compel the executors to render an account of the personal estate of the testator, also of the rents of the real estate which they have received as her agents ; for an account of the money which Johnston received on his mortgage ; and to have the purchase made by him at the chancery sale declared to be for the benefit of the complainant and the other heirs.

*W. Skidmore*, for the complainant.

*Dan Marvin*, for the defendant Johnston.

THE ASSISTANT VICE-CHANCELLOR.—The defendants, under the will of Thomas Campbell, had merely a *power in trust*. No estate vested in them, and the land descended to the heirs. (1 R. S. 729, § 56.) Their possession of the premises, taken under the erroneous impression that they were entitled to it as executors, must be accounted for to the heirs.

The next question arises upon the attempts made by the defendants to sell the property under the will. No satisfactory or even plausible reason is shown, in either case, why the respective purchasers did not complete their purchases.

Assuming the mortgage to the defendant Johnston, to have been wholly unpaid, the amount of the incumbrances on the premises was considerably less than the smallest sum at which they were struck off at those sales. But it is said that those purchasers *claim* that the ten per cent. which they paid upon the sales ought to be refunded to them; and they are gravely sworn as witnesses to prove that they make such a claim.

The defendant Johnson, in his answer states that he believes this claim is made legally or on good ground.

Now the first sale was made by the executors in the fall of 1838, and the ten per cent. paid at the time. Four years had elapsed when the purchaser made his claim by testimony; and he had never instituted any proceedings for its recovery. In the other instance, more than three years had intervened with the like omission. In the mean time the premises had been foreclosed and sold, so that neither purchaser could expect to complete his purchase. Indeed, both concede that they declined to complete, and the answer admits that they refused.

Under such circumstances, the reason set up by the defendant Johnston for not accounting for this money cannot be allowed. If those purchasers were responsible men, he may consider himself fortunate that he is not required to account for his omission to compel them to complete their contracts.

The mortgages to the New-York Contributionship were foreclosed, the premises sold, and the defendant Johnston became the purchaser at the sale. The complainant claims that he stood in the situation of a trustee, so that he could not purchase the property for his own benefit. I do not perceive any evidence of the value of the premises at the time of the master's sale. In 1838 they were sold by the executors at auction for $3900; and in 1839 for $3000. The defendant bid them off for $2425. It is quite probable that if he had not become the purchaser they would have sold for even less than that sum, but that is not material. (*Ex-parte Bennett,* 10 Ves. 385, per Lord Eldon.)

In this case the defendants were clothed with a power in trust for the sale of the premises and the distribution of the proceeds to the children of the testator. They were also the testamentary

guardians of the infant children. In both capacities, as trustees of the power, and as guardians of the beneficiaries, they had a duty to perform in regard to this property, which, it appears to me, rendered it inequitable for them to become the purchasers.

Their first duty was to preserve the property for the children until a sale could be effected. The interest on the mortgages to the New-York Contributionship was only $84 per year, and the premises were rented by them at one time for $250 per year.

It does not satisfactorily appear why the defendants suffered those mortgages to be foreclosed. Johnston states in his answer, that the mortgagees rigorously insisted upon the payment of the principal. This is not proved, and situated as he was in reference to this transaction, he ought to have proved it. As the case stands, I infer that the defendants were guilty of a neglect of duty in allowing the foreclosure to proceed. The mortgages had been permitted to remain for a great many years, on the payment of the interest; and no circumstance appears indicating a change of policy on the part of the company. This statement exhibits the conflict between interest and duty, which so often occurs in the instance of persons holding fiduciary relations to property, and of itself, vindicates the inflexible rule which equity has steadfastly maintained on this subject. (See the principles and authorities in Lewin on Trusts and Trustees, 376, &c. *Greenlaw* v. *King,* 5 Lond. Jurist. Rep. 18, per Lord Cottenham.)(*a*) It also establishes a breach of trust in the defendants, of which neither can be permitted to avail themselves. On both grounds, I am satisfied that the defendant Johnston ought not to be permitted to retain the property as

(*a*) And see *Burton* v. *Wookey,* (6 Madd. 367 ;) *Hamilton* v. *Wright,* (9 Clark & Fin. 111,) and the Scotch cases there cited ; *Dickinson* v. *Codwise,* postea.

In *Fisk* v. *Sarber,* (6 Watts & Sarg. 18, Sept. 1843,) it was decided by the Supreme Court of Pennsylvania, that the assignee of an insolvent debtor, is not incapable by reason of his fiduciary character, of becoming the purchaser of the debtor's real estate, when sold by the sheriff upon a mortgage which incumbered it before the time of the assignment. Mr. Justice Rogers dissented, in a very able opinion. See also, *Prevost* v. *Gratz,* (Peters' C. C. R. 378,) and the numerous Pennsylvania decisions cited in *Fisk* v. *Sarber.*

against his beneficiaries or his wards.    The case of *Van Epps*
v. *Van Epps*, (9 Paige, 237,) is decisive of the point.

As to the terms upon which such a sale will be set aside, the
*cestui que trust* may have a re-conveyance, or the estate may
be re-sold.    (Lewin on Trusts, 382, 385.)

In this case it may be but a barren victory, and as the prayer
of the bill is alternative, I will give to those interested, an op-
portunity to elect whether the sale shall stand, or whether they
will have a decree for a re-sale, or a re-conveyance.

In either event, it becomes necessary to dispose of the ques-
tion arising upon the bond and mortgage brought forward by
Johnston against the testator, and on which he obtained the
surplus money upon the sale under the foreclosure.    (Upon ex-
amining the testimony on this point, the court decided that the
bond and mortgage were not justly due to the defendant.)

If the parties in interest shall elect to have the sale stand, the
defendant Johnston must account for the surplus which he
received after paying off the Contributionship debt and costs.

The personal property appears to have been small, but as
there has been no settlement by the executors, it must be made a
part of their accounting.

An *objection of form* remains to be considered, which the
defendant presents for the first time at the hearing.    It is said
that the suit is defective, because the two infant children of the
testator are not parties.    If the suit were one for an account and
settlement against executors merely, the case of *Hallett* v.
*Hallett*, (2 Paige, 15,) would be an authority for sustaining the
bill, in its present shape.    But it is made to affect the defendant
Johnston as trustee, and to call for a re-sale or a re-conveyance
of the estate in which the infants are interested.    In the view
which I have adopted, an election of remedies becomes neces-
sary ; and upon this all the parties in interest should be heard.

The case will have to stand over to bring the infants before
the court.    They may be made defendants by a supplemental
bill, or otherwise, as the complainant may be advised.(*a*)

_____

(*a*) The infants were made parties, and a decree subsequently made accordingly.