MYRON P. STILES v. STEPHEN STILES, PHILANDER STILES, and SETH BEEMAN.

(GENERAL TERM, SEVENTH DISTRICT, JUNE, 1869.)

A sale of infant's real property having been made and completed, under proceedings before a County Court, a subsequent order of the same court, directing the special guardian to invest the proceeds, in land outside the county over which its jurisdiction extends, the infant and special guardian being at the time resident in the county where such land is located, is a nullity.

Whether proceeds of a judicial sale of infant's real property, remaining in the hands of the special guardian, can be regarded as land, under 2 R. S. 195, § 180, in such sense as to give a County Court power to direct the disposition thereof. *Quere.*

The power of County Courts, under § 30, sub. 6, of the Code, for sale, etc., of an infant's real estate, includes all incidental powers and the use of means necessary to complete the sale, by transferring the infant's title, and securing to him the avails of his interest in his estate. Per JOHN-SON, J.

Stiles *v.* Beeman.

But, whatever is done in this respect, must be done when the parties and subject matter are before the court; and as part of the proceedings to sell, etc. The security then deemed necessary, if given, or investment ordered, if made, is the judgment of the court; its powers are exhausted thereby, and its jurisdiction over the parties and subject matter is at an end. *Id.*

Rule 69 of this court refers to proceedings at the time of sale. *Id.*

At least, it can control County Courts, only as so applicable; it cannot enlarge their statutory powers. *Id.*

The powers conferred by 2 R. S., 195, § 179, upon the Court of Chancery, through which the infant is made a ward of that court, from the time of the application, for the purposes ennumerated in the statute, have not been expressly given to the County Courts, and cannot be implied from mere power to sell infants' lands.

A special guardian, appointed on the judicial sale of a minor's real property, being liable for money received therefrom, conveyed to one of the sureties upon his bond, a farm, subject to a mortgage, upon trust, that the surety reimburse himself from the rents and profits, or proceeds thereof, for such sums as he might be required to pay by reason of liabilities of the latter, on the grantor's account. The farm was then conveyed by the surety to the minor, under agreement between them and the special guardian (who was insolvent), that it should satisfy the bond, and discharge the special guardian and his sureties from liability thereon. The mortgage being afterward foreclosed, the surety purchased at the foreclosure sale, and went into occupation; the minor, attaining his majority, elected to ratify the agreement and deed pursuant thereto.—*Held*, The purchase by the surety was voidable by the minor, when he came of age.

The ratification by the minor, at his majority, did not, by relation to the time of the conveyance, cut off his equitable right, to claim the purchase by the surety as made for his benefit.

THIS was a motion, at General Term, for a new trial upon a case and exceptions, under sub. 1, § 268 of the Code, as amended in 1867.

Myron P. Stiles brought the action against Stephen and Philander Stiles, and Beeman, demanding reconveyance of a farm of 325 acres of land, in Ontario county, in Stephen's possession, and, for rents and profits thereof; or, failing that relief, the sum of $3,500, with interest. There was a trial before a judge at Special Term, and the following facts appeared.

On the 14th June, 1853, the County Court of Yates county ordered a sale of real estate, situate in that county, belonging

to the plaintiff, then about nine years of age. Philander Stiles, the plaintiff's father, who, as next friend, had petitioned for the sale, was appointed special guardian, executed the usual guardian's bond, in which the defendants Stephen Stiles and Beeman, joined as sureties; and, May 9th, 1854, sold and conveyed, under the order, for $2,000. The order directed the residue of the proceeds, after deducting expenses, to be put out at interest.

On the 8th January, 1863, Philander, being owner, conveyed the farm in question, subject to a mortgage held by Hobart College, to Stephen, in trust, to apply the rents and profits, or the avails of any sale thereof, to the payment of certain debts owing by Philander, for most of which Stephen was liable, as his surety, and to reconvey the residue.

On the 1st February, 1863, the money received by Philander as special guardian, amounted, with interest, to about $3,500, and no portion of it had been paid over. An agreement was then made between the plaintiff, still under age, Stephen, and the special guardian, who was insolvent (all at this time residing in Ontario county), in pursuance of which an order was obtained from the Yates County Court, directing the special guardian to invest the plaintiff's said money in a purchase of the farm held by Stephen in trust; the conveyance, when made, was, by the agreement, to be in satisfaction of the special guardian's bond, and of the other defendants' liability thereon, as sureties. The order was procured upon the joint application of the plaintiff and his special guardian. A conveyance was made, in pursuance of it, by Stephen to the plaintiff, February 6, 1863, and Philander occupied and used the farm by arrangement between himself and plaintiff.

Default was made in payment of interest on the Hobart college mortgage; it was foreclosed; and at a sale made under the decree, June 3d, 1864, Stephen became purchaser, and soon after took possession. After the sale, plaintiff attained his majority, and affirmed the agreement and conveyance to him in pursuance thereof, and demanded

possession of Stephen, which was refused. Judgment was given for the plaintiff, directing such reconveyance as might be necessary, an accounting for rents and profits, with just allowances to defendants, and declaring plaintiff entitled to possession of the farm.

*H. O. Cheesebro*, for the plaintiff.

*Herron & Hubbell*, and *H. R. Selden*, for the defendant, Stephen Stiles.

Present—E. D. Smith, Dwight and Johnson, JJ.

By the Court—Johnson, J. It must be admitted, I think, that if the defendant had, by virtue of the order of the County Court of Yates county, dated Feb. 5th, 1863, and his subsequent conveyance of the farm in said order mentioned, to the plaintiff, become completely exonerated and discharged from all further liability upon the bond executed by him, as surety for the plaintiff's special guardian; and also from the trust under which he had, before such conveyance, held such farm, and was from that time under no further obligation, and owed no further duty to the plaintiff, his purchase of the farm afterward, at the sale under the foreclosure of the Hobart college mortgage, was valid, and vested a perfect title in himself, free from any claim or liability to account to the plaintiff, or any one else. If his obligations and duties had, before that time, all been performed and fulfilled, according to law, both as respects the bond and the trust upon which he held the land, he was as much at liberty to purchase for himself as any third person, and to retain all the benefits and advantages thereof, as exclusively as though he had, before that time, been an entire stranger to the plaintiff. This, I think, will be found to be the rule, in a case of this kind, according to all the authorities: His former relation, it is obvious, did not give him any peculiar means of information, nor had he acquired any which was not possessed by all the other parties to the transaction.

Stiles *v.* Beeman.

But I am clearly of the opinion that he had not, at the time of such sale and purchase, under the mortgage foreclosure, fulfilled all his obligations to the plaintiff, and that the same were still subsisting and in force, and the corresponding duties remained undischarged. The plaintiff had not, at that time, attained his majority, and was wholly incapable, either of affirming or disaffirming what had been done with him or in his behalf. It was, then, wholly uncertain whether he would sanction the transaction or not; and if his sanction was necessary to complete the performance, and satisfy and discharge the obligation of the bond, such bond remained of force until the sanction was given. If, however, the order of the County Court was a valid order, the conveyance having been made in pursuance of it, I do not see that the ratification of the transaction by the plaintiff was of any importance, or that his assent or dissent could affect the matter in any way, any more than it could the sale of his land originally, under the order of the same court, in 1853. If the court had jurisdiction, its judgment was conclusive, and the order, when executed and carried into full effect, was a complete and final disposition of the whole matter, binding upon all the parties in interest, who were before the court. But it seems to me quite clear that the order in question was not a valid order, and that the court by which it was made had no power or jurisdiction to make it. The County Court is a court of special and limited jurisdiction; it is the mere creature of the statute, and has no other power than that which the statute has conferred. (*Frees* v. *Ford*, 6 N. Y. R., 176.) Indeed, the statute, by which these courts are created, declares in express terms, that they "shall have no other jurisdiction than that provided in the next section." The succeeding section provides amongst other "special cases," and gives the power "for the sale, mortgage, or other disposition *of the real property situated within the county*, of an infant, or person of unsound mind." This is all the power conferred. It is too plain for argument that the power which the court undertook to exercise in granting the order

in question, was quite other, and different from that of sell-
ing, mortgaging, or otherwise disposing of the lands of this
infant situated in Yates county. His lands situated in that
county had been sold ten years before, and the proceeds of
such sale had remained, and then were in the hands of the
special guardian appointed for such sale. The case shows
plainly that all the parties, the plaintiff, the special guardian,
and his surety, the defendant, at the time of the making of
this order, resided in Ontario county; and the order under-
takes to direct, that the special guardian shall invest the
moneys of the infant in his hands in the purchase of lands,
situated in the county of Ontario, and have them conveyed
to the infant. In other words, to compel the infant to take
a conveyance of lands heavily encumbered, situated in another
county, in satisfaction of the bond given for his benefit. It
needs but a simple statement of the matter to show conclu-
sively that the whole proceeding was a nullity, and entirely
beyond any power conferred upon the court. No amount of
ingenuity, or force of reasoning, can, as it seems to me,
change this. It was not land at the time, but money in the
special guardian's hands. But even if the avails of the sale
in 1853 could still be regarded as land under the provision of
the Revised Statutes (2 R. S., 195, § 180), it was not situatea
in Yates county. The infant and the special guardian, as
has been already said, were residents of another county, and
the land which was the subject of the order was also out of
the county, and beyond the territorial jurisdiction of the
court in respect to infants' lands. The County Court had
exercised and exhausted all the power it ever had on the sub-
ject, when the sale ordered was completed, ten years before.
The transaction was then complete, and the rights of all the
parties fixed. The purchaser became vested with the title to
the plaintiff's lands, and the rights of the plaintiff vested in
the bond of the special guardian and the sureties thereto,
which the court had ordered to be given for his benefit and
security. The proceeding, in which the order in question
was made, was not the same proceeding, but a new, and

original one, for a different object and purpose. It had no relation to the sale of infant s lands, situate in Yates county, or to mortgaging, or otherwise disposing of the same, for he had none in that county. It was for the purpose of disposing of the infant's money by converting it into land, and of compelling the infant to purchase land with such funds, by way of relieving the special guardian, and his sureties, from their obligation to the infant upon their bond. This power, as a distinct and independent power, is not conferred by the Code, and consequently not possessed by such courts. The power to sell, mortgage, or otherwise dispose of the real estate of an infant, conferred upon these courts, includes, undoubtedly, all incidental powers and use of means, necessary to complete such sale, by transferring the title of the infant to the purchaser, and securing to the infant the avails of his interest in his estate. But, whatever is done in this respect, must obviously be done when the parties and the subject-matter are before the court, and as part of the proceeding to sell, or otherwise dispose of the infant's estate. The security which the court then deems necessary for the infant, if given, or the investment ordered, if made, is the judgment of the court on that question; and such court cannot afterward in another proceeding, make a new disposition of the fund, any more than a justice of the peace can modify or correct his judgment after it has been rendered, upon reconsideration, or a new hearing in respect to some parts of it. The power has been exercised and expended; and the jurisdiction of the court over the parties and over the subject-matter, is at an end. We are referred to the 69th rule of court, as affording some authority for the proceeding. But I do not see that it helps the defendant's case. That rule, it will be seen, refers to proceedings at the time of the sale, and prescribes how the avails shall be disposed of, as part of such proceedings, while the parties therein are yet before the court. But if it were held to be otherwise, and to relate as well to future proceedings, to secure the funds of infants, who are wards of the court in which the proceedings are had,

Stiles *v.* Beeman.

it could make no difference, as those rules only control County Courts, so far as they may apply to, and be consistent with, the powers granted to such courts by the statute. The judges, who are authorized to make rules, cannot confer thereby powers, upon County Courts, which the statute has not given either in terms, or by necessary implication.

The power given to the Court of Chancery, by the Revised Statutes, on the subject of the conveyance of lands by infants, and of the sale and disposition. of their estates, and which is now vested in the Supreme Court, has nothing to do with the power conferred upon the County Courts. The powers granted to the County Courts are neither limited nor enlarged by the provisions of the Revised Statutes. They are simply original powers confined within the limits expressed, and wholly unaffected by similar powers conferred by statute upon other courts. (*Davis* v. *Spencer*, 24 N. Y. R., 386.) The plaintiff was not a ward of the County Court, as the statute has not conferred the power of guardianship upon it, over infants in such cases. These courts cannot take power by implication, but it must be expressly conferred in every instance. By the Revised Statutes (2 R. S., 195, § 179), the infant was made the ward of the Court of Chancery, from the time of the making of the application to the courts, for the sale, so far as relates to the property, its proceeds and income, but no further ; and the court is expressly authorized to make orders for the application and disposition of the proceeds of such property, and for the investment of the surplus belonging to such infant, and to require accounts to be rendered periodically by any guardian or other person, who may be intrusted with the disposition of the income of such proceeds. These powers have not been given to the County Courts, and are not embraced within the mere power to sell infant's lands within the county. To authorize a transfer of title is one thing, but to control and administer the proceeds afterward as guardian, is quite another and different power. The former power certainly does not include the latter. The order of the County Court being void and of no

effect, the case stands simply upon the footing of a voluntary arrangement between the parties for the conveyance of the land in question to the plaintiff, then an infant, in satisfaction of the guardian's bond to him, or for his benefit. It did not and could not operate as a satisfaction of such bond, until the time arrived when the plaintiff was competent to accept and ratify, and then only in case he did so accept and ratify. Then, and not till then, was the bond satisfied and the guardian and his sureties discharged. Until that time, all the duties and obligations of the guardian, and of his sureties, remained unfulfilled and undischarged, and the relation of trustee and *cestui que trust* continued. Viewed in this light, the rights of the plaintiff appear extremely clear. The defendant's purchase, under the mortgage foreclosure, was made while this relation of trustee and *cestui que trust* existed. He was the surety of the trustee, and bound for the performance, by the latter, of all his duties and obligations growing out of the relation. The guardian was insolvent, and had conveyed this farm to the defendant in trust, to indemnify him against his liability as such surety; and the main object, as plainly appears from the evidence, was, that this farm might be conveyed to the plaintiff, in satisfaction and discharge of the obligation of both the guardian and surety. It was so conveyed, and the conveyance must and would so operate, provided the plaintiff should sanction the transaction when he should become enabled legally to speak on the subject. It was his property, to all intents and purposes, at his option to retain it. Neither the defendant nor the special guardian could take it away from him, or control it. It was in his hands a security in equity, for the fulfillment of the bond of his guardian, until he chose to relinquish it or retain it on becoming of full age. In this situation of things, it is clear enough that the special guardian could not purchase this farm at a hostile sale, for himself, and deprive his ward of the security, or of the title. If he attempted to make such purchase, in his own right, the law would not allow it, but would hold it to be a purchase for the ward, if the latter

Stiles v. Beeman.

chose to take it, in whatever form such purchase was made and consummated. The authorities on the subject are so numerous, that I shall undertake to cite only a very few, in our own courts: (*Evertson* v. *Tappen*, 5 Johns. Ch. R., 498; *Torrey* v. *Bank of Orleans*, 9 Paige, 650, aff'd. 7 Hill, 260; *Van Epps* v. *Van Epps*, 9 Paige, 238; *Campbell* v. *Johnston*, 1 Sand. Ch., 148; *Chapin* v. *Weed*, 1 Clark, 464.) These well settled principles apply, I think, in full force, to the defendant, under the circumstances of this case. He was in legal privity with the special guardian, and bound for him, in respect to the performance of the original trust. He received the farm upon a trust from the special guardian, to enable him to discharge his obligation. If the plaintiff had disaffirmed the transaction on arriving at his majority, he would have been under the necessity of conveying it back to the defendant, to hold upon the same trust, and by way of security for himself and for the plaintiff. In this condition he could not purchase in hostility to the rights, either of the special guardian or of the plaintiff. He could not, by his own act, affect either the vested or the contingent rights of either of those parties. He was under a double disability to benefit himself in the transaction. The defendant's trust, as to the farm, was ended by the conveyance to the plaintiff, at the request of the special guardian, only contingently. It depended altogether upon the plaintiff's subsequent ratification. His purchase was, therefore, in law, a purchase for the plaintiff's benefit, inasmuch as the plaintiff has elected to keep the farm and ratify the arrangement, and the conveyance to him. Even if the defendant intended to purchase in his own right, and for his own exclusive benefit, the law will overrule the intended wrong, and make it subservient to the ends of justice and morality. It is one of the cardinal offices of equity, where it has jurisdiction, to compel men, even if they do not love justice, to practice it in their dealings with their fellow men. It is claimed, however, that the plaintiff has deprived himself of the advantage of the equitable rule, by his affirmance of the transaction by which the land was

conveyed to him by the defendant. It is argued that this ratification goes back to the original transaction, and places the parties in the same situation in which they would then have stood, had the plaintiff been, at the time, of full age; and the defendant must be regarded, in law, as having, at that time, been fully discharged from all his obligations to the plaintiff, and all his relations to him. This is exceedingly technical, when applied to a case like this. The deduction is that the plaintiff, when he became of age, deliberately chose to give the defendant all his estate, and retain nothing for himself. This will hardly do, and does not need any elaborate answer. By ratifying the purchase, he elected to take the title as it was when it first came to him, with all the protection which the law had given to it, while in his hands, with the questions of acceptance, and the determination of the defendant's obligation, and of his trust, in abeyance. The law had already made the defendant's purchase the plaintiff's, in case the latter elected to keep the land. If the rule were otherwise, it would work the most palpable injustice, and be a reproach to the law. ·Unless the plaintiff's title can be upheld and maintained against the defendant, this would, to use the language of Lord Chancellor Thurlow, in the leading case of *Fox* v. *Mackreth* (2 Bro., C. C., 400), be a transaction "such as cannot be endured out of a court of justice; and if a court does affirm such transactions, it cannot be the heart of a judge which affirms it, but it must be done from a fear of laying down such rules as may tend to make the general transactions of mankind too insecure." No title had vested in the defendant, by virtue of his purchase at the foreclosure sale, either as against the plaintiff, or as against Philander Stiles, in equity, when the time for the election of the plaintiff had arrived; and certainly it did not vest in him by virtue of the plaintiff's choice to have the land for himself. The defendant, by purchasing at the foreclosure sale, had either put it out of the power of the plaintiff to affirm or disaffirm the conveyance to him, at his majority, and so remained liable upon the bond, or he

held under his purchase, subject to the plaintiff's election to affirm and take the land, as he, the defendant, then held it. His theory now is, that he had rendered it impossible for the plaintiff to disaffirm, by taking from him the subject of the conveyance, and putting it out of his power to disaffirm and restore; but still maintains that the plaintiff might ratify, and such ratification would have the effect to cut off all his equities, and deprive him of all the benefits of a ratification. But a court of equity cannot fail to see what the ratification was, and that it was intended by the plaintiff to be one beneficial to himself, and not injurious. That he meant to have it embrace all that his special guardian and the defendant had done in his behalf, and to include all the advantages the law had secured to him during the period of his incapacity to elect.

Equity will thus construe his election, and require him to assume all the additional burdens growing out of the purchase at the foreclosure sale, after the defendant shall have accounted for the benefits he has derived from it.

The judgment of the Special Term is right, and must be affirmed, with costs.

Judgment affirmed.