WILLIAM B. MILLS, AS ADMINISTRATOR, ETC., OF DAVID N. FOLLETT, DECEASED, APPELLANT, v. FRANCES R. HOFFMAN, RESPONDENT.

*Trustee — liability of, for receiving improper securities from his predecessor — duty of, as to collecting securities.*

November 19, 1863, one Mills was appointed administrator, with the will annexed, of D. N. Follett, deceased, and received from the administrator of Follett's executor, as part of the assets of the estate, fifteen shares of bank stock at the par value of $1,500, and two promissory notes given by Follett's widow to the executor. Follett had subscribed for the stock before his death, and the certificates were subsequently issued to his executor. Mills was at that time a stockholder in and director of the bank, and continued so to be until the failure of the bank in 1867. After the failure of the bank he was compelled to pay to its receiver, as an assessment on the said stock, the sum of $829.40.

*Held,* that upon the passage of his accounts he was properly charged with the value of the stock, and disallowed the amount of the assessment paid by him thereon.

That as the notes were given to the executor individually, and as his estate was solvent, Mills by accepting them made himself responsible for them and was properly charged with the amount of them, the maker having become insolvent.

It is the duty of trustees to invest funds held by them in government or State securities, or in bonds and mortgages on unincumbered real estate. While this rule is not arbitrary and inflexible so as to admit of no possible exceptions it is the basis upon which trustees should usually act ; in any event a trustee is bound to employ such diligence, care and prudence in the management of the trust, as diligent, careful, prudent men of discretion and intelligence generally employ in their own like affairs; and for a neglect to make use of such diligence, care and prudence the trustee is liable to the *cestui que trusts.*

APPEAL from a decree of the Surrogate's Court of Cayuga county, made in a proceeding taken to require the appellant to render an account of his proceedings as administrator, etc., and to pay over to the respondent her portion of the distributive share of the estate of her deceased father.

*Howland & Wheeler,* for the appellant.

*Charles M. Baker* and *Amasa J. Parker,* for the respondent.

HAIGHT, J.:

David N. Follett died in the county of Cayuga on the 15th day of May, 1854, leaving him surviving, Mary A. Follett, his widow, Marilla E. Weager and Frances R. Hoffman, his children and heirs-at-law. He left a last will and testament, made and executed before the respondent was born, and in which she was not mentioned nor provided for. By such will Jesse H. Forman and Lee Ogilsbie were named as executors. The will was duly proved and admitted to probate on the 28th of June, 1854. Before his death, Follett subscribed for fifteen shares of the stock of the Weedsport Bank, at the par value of $1,500. After his decease the certificates of stock were issued to Lee Ogilsbie as his executor. This stock was never disposed of by Ogilsbie, but was retained by him until the time of his death. Both of the executors named in the will died without rendering any account of their proceedings. On the 19th day of November,

1863, the appellant, William B. Mills was appointed administrator with the will annexed. Mills, as such administrator, received from the administrator of the estate of Ogilsbie, as part of the assets of the estate of Follett, the fifteen shares of stock of the Weedsport Bank, at $1,500; also two notes given by Mary A. Follett to Lee Ogilsbie, one for $101, the other for $329.57. The bank stock was retained by Mills, as administrator, as an investment, until July 22, 1867, when the bank failed, and it became worthless. The stock not only became worthless, but, as such stockholder, he became liable to the creditors of the bank, and, as such, was sued by the receiver, and compelled to pay on an assessment of the stock, the amount of $829.40. From the year 1864 until the failure of the bank, Mills, the appellant, was a director of the bank. The notes of Mary A. Follett have never been paid, and no attempt has been made on the part of the administrator to collect them by suit. She has now become insolvent. In or about the month of November, 1867, an action was commenced in this court by one James A. Follett, against Mary Ann Follett, widow, and all of the next of kin and heirs-at-law of David N. Follett, deceased, including Frances R. Follett, the respondent herein, and William B. Mills, the administrator, to determine the rights of all the parties in relation to the estate, and requiring the administrator to render an account of his administration, and to pay over the funds in his hands to the parties entitled to the same. The administrator did render an account in that action, and such proceeding were had therein, that on the 13th day of July, 1869, judgment was entered, requiring the administrator to pay over certain moneys, and deliver certain property to the parties entitled thereto. Under such decree the administrator did pay over to the guardian of Frances R. Follett the amount therein adjudged to be going to her, but did not pay over or account for, any of the items hereinbefore referred to. On the 31st of August, 1870, the administrator, by an order of this court, was released and discharged from his duties as administrator. Subsequently, and on the 26th day of October, 1875, the judgment and order discharging the administrator referred to, were vacated and set aside as to Frances R. Follett only, for the reason that when the action was brought and prosecuted, she was an infant, and that no guardian *ad litem* had been appointed to take charge

of her interests in that action, and that the court had acquired no jurisdiction of her person. She having in the meantime become of age, then appeared in the action, and interposed a demurrer to the complaint. Subsequently, and on the 13th day of April, 1876, the court, upon stipulation of James A. Follett, the plaintiff, granted an order dismissing the complaint in that action as to the defendant Frances R. Follett, without costs to either party. At this time she also settled in full with both Colvin and Beach, her guardians, they accounting to her for all the moneys received from the administrator.

The surrogate in his decree held that the administrator was properly chargeable with the amount of the bank stock and of the promissory notes mentioned, and that he was not entitled to credit for the $829.40, which he has paid the receiver of the bank as an assessment upon the stock.

The first question urged on the part of the appellant is that the respondent is estopped from again calling him to an account, by reason of the judgment and proceedings thereon, and the settlements made by the respondent. As to the judgment, the same has been vacated and set aside, so far as she is concerned. She is not, therefore, bound by the judgment, for no judgment exists as against her. She subsequently demurred to the complaint in that action, and thereafter a settlement was had with the plaintiff in that action, on which an order was entered dismissing the complaint as to her. No settlement, however, was had with the administrator, who was a defendant in that action, and any right existing as between the administrator and this respondent was not and could not be affected by that settlement. She also settled with her guardians, the persons to whom the administrator has paid over the money required by the judgment referred to. They rendered to her an account of all the moneys that they had had and received. She settled with them and relieved them from further duty. This she had the right to do, and the rights of the administrator were not affected or prejudiced by reason of such settlement. The money that he had paid over under the judgment, the judgment having been subsequently vacated, he had the right to recover back from her, or to charge against her in a further accounting. No claim is made against him as to many matters accounted for and paid over to her guardians.

It is only as to those items which have not been accounted for that she claims to recover. We are, therefore, of the opinion that she is not estopped by reason of these settlements from calling him to account.

The next question to be considered is as to whether he should be charged with the item, Weedsport Bank stock, $1,500.

The duties of trustees in the administration of trusts becomes the first subject of inquiry. The rule as stated by Willis on Trustess, 125, is that : "A trustee is bound to manage the trust property for the benefit of his *cestui que trust* with the care and diligence of a prudent owner." Another writer says : "A trustee is called upon to exert precisely the same care and solicitude in behalf of his *cestui que trust* as he would do for himself ; but a greater measure than this a court of equity cannot exact." (Lewis on Trustees, 152.)

In Story's Equity it is said that when a trustee has acted in good faith, and in the exercise of a fair discretion and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses occurring in the management of the trust property. (Sec. 1272.) In the case of *Thompson* v. *Brown* (reported in 4 Johns. Ch., 619) it was held that an executor, who puts into the hands of a surviving partner assets which he had in his hands and under his own control to trade with, will be answerable for the loss, but executors and administrators or trustees acting with good faith and without default or fraud will not be held responsible for the loss which may arise. The case of *Higgins* v. *Whitston and others, Executors, etc.* (20 Barb., 141) was a case where the trustees made a loan of $6,000 on real estate valued at $16,000. It was incumbered by a prior mortgage of $4,000. The investment was made with the knowledge and consent of the *cestui que trust*, who was a man of full age and capable of comprehending his own interests and of deciding correctly as the generality of men, although his mind was to some extent impaired by intemperate habits. It was held that the trustees were not liable for the loss, that it cannot be expected from trustees that they are to act upon principles different from those which actuate cautious and prudent men in the transactions of their own affairs. The case of *Litchfield* v. *White* (7 N. Y., 438) was an

action to set aside a voluntary assignment to a trustee for the benefit of creditors. It was held that trustees were liable for ordinary negligence, or the want of that degree of diligence which persons of common prudence are accustomed to use about their own business and affairs. The case of *Baskin and Baskin, Executors, etc.,* v. *Baskin* (4 Lans., 90) was a decision of this court in this department. The facts, as near as we can gather from the reported case, were as follows : A special administrator had made collections and deposited the money in his own name in J. T. Rapler's Bank. The executors when appointed did the same thing. When the deposits were made certificates were taken payable in six months after date. The executors in settling with the special administrator received from him his certificates of deposit and held the same for two years. The bank failed at the expiration of the two years and there was a loss. It was held that the executors were liable for the loss; that the special administrator had no right to loan the trust moneys in his hands; that the executors received the certificates of deposit from the special administrator upon their own responsibility; that they could not by an arrangement between themselves convert into assets the proceeds of an unauthorized transaction; that they might as well have taken his note for money improperly appropriated and attempt to make it assets. It was held further that the delay of the executors for two years in making the collection on the certificates of deposit was unreasonable and a breach of their duty as executors, and for this reason they were also liable. It was also held that the deposits made by the executors, being on time, were a loan, and for the same reasons they are liable for such deposits. The case of *King* v. *Talbot, Executors, etc.,* (40 N. Y., 76), was a case where the executors were charged with the trust of investing legacies of infant children, to be used so far as required, for their maintenance and education, the principal, with accumulations thereon to be paid to them severally on their becoming of age. The executors invested their funds in canal, bank and railroad stocks. The children upon coming of age, refused to accept the stocks. It was held that they had a right to recover of the executors the whole amount of their legacies, with the interest thereon. That the law imposes upon trustees, holding trust funds for the benefit of minor children, the duty of placing them in a state of security, of seeing

that they are productive of interest, and of so keeping them that they may be subject to future recall for the benefit of the *cestui que trust ;* that investments in canal, bank, insurance, railroad or other stocks of private corporations, is a violation of duty, and of the obligations of the trust.

From our examination of the authorities and the cases referred to, we have come to the conclusion that as a general rule it is the duty of trustees to invest funds held by them, in government or State securities, or in bonds and mortgages, on unincumbered real estate. That while this rule is not arbitrary and inflexible, so as to admit of no possible exceptions, it is the basis upon which trustees should usually act ; that in any event the trustee is bound to employ such diligence, care and prudence in the management of the trust, as diligent, careful, prudent men of discretion and intelligence generally employ in their own like affairs, and that for a neglect to make use of such diligence, care and prudence, the trustee becomes liable. (See *King* v. *Talbot,* 40 N. Y., 76 ; *Adair* v. *Brimmer,* 74 id., 539, 551 ; *Ormiston* v. *Olcott,* 84 id., 339.)

In the case under consideration, the administrator was a stockholder in the bank, and from October, 1864, was a director until it failed. It was therefore his duty to take part in the control and management of the bank. He was thus afforded an opportunity, and it was his duty as director, to inform himself as to its financial condition. For the period of three years and eight months he held this stock as administrator, and up to the very day of the failure of the bank, making no attempt to sell or convert the same into money. The debts of the testator had all been paid by the executors in their lifetime, and the heirs and legatees were awaiting the settlement of the estate. Under these circumstances we are of the opinion that he was guilty of negligence in not using that degree of care and prudence that the law requires. This negligence cannot be excused by reason of the advice of the guardian and mother of the infant, to allow the stock to remain. The duty of administering the estate was upon him. The responsibility was his, and not theirs, and it is not claimed that they had any knowledge or means of ascertaining the true condition of the bank. If the appellant was guilty of negligence in holding on to the stock in question and not converting it into money, then it follows that he

cannot be credited with the item of $829.40 paid by him on the assessment of the stock, for such liability was the result of his careless act in not converting the stock into money.

As to the notes, they appear to have been given to Ogilsbie individually. They were therefore his property on which he could, in his own name, have maintained an action. They were not assets of the estate of David N. Follett. No claim is made but that the estate of Ogilsbie was solvent, and well able to pay every dollar it owed. The appellant accepting the notes in question from the executors of Ogilsbie, did so upon his own responsibility, and must be held liable therefore. (*Baskin* v. *Baskin*, 4 Lans., 90.)

The decree of the surrogate should be affirmed, with costs.

SMITH, P. J., and HARDIN, J., concurred.

Ordered accordingly.